No, please remove it. Thank you. Thank you for asking and being careful. May it please the court, Mr. Durbin. I'd like to address two questions to start off with. Question one, what significance, if any, is the government's argument that possession with intent to distribute is a continuing offense? Question two, can the Supreme Court's statement in Rosemont, Rosemond, I'm not sure I'm saying it right, the United States that appears to hold that an aider and abetter need only abet one element, how does that square with the cases that I've cited in the brief that appear to hold that an aider and abetter must aid and abet all the elements? Government points out that possession with intent is a continuing offense and for purposes of venue and statute of limitations, it is. Let's just assume it is in this case. If so, possession with intent to distribute begins when the defendant has the power and intention to exercise control of the controlled substance and it ends when his possession is interrupted by a complete dispossession. Mr. United States v. Roe 919 F3rd 752. And that means in this case, Mr. Garcia, the principal, his offense, at least for sure, began when he came into possession and it ended when the officers took his methamphetamine away from him at the Road Ranger in Odessa. The only evidence that we have in the record as to what happened between Mr. Cabello and Mr. Garcia prior to 1039 on the night of June 9th, 2020 is what came from the lips of Mr. Cabello. They'd been apparently at Mr. Cabello's house in Fort Stockton earlier in the day. Mr. Garcia used Mr. Cabello's phone. Mr. Cabello ran errands. They left Fort Stockton about 4, arrived in Odessa about 622. They stopped at the apartment of some oil field worker. Mr. Cabello stayed in the truck. Mr. Garcia got out and got a bag. Then they went to Jorge's house. Jorge, Mr. Garcia told Mr. Cabello, was Mr. Garcia's cousin. He was just going to drop him off there and leave him there for the night. So they went there. Mr. Cabello stays in the truck. Mr. Garcia goes to the door and talks to Jorge. Mr. Garcia comes back, says, we want to borrow your truck so Jorge can move an RV. Cabello says, no, you can't do that. They go to the airport and they rent a vehicle so that Jorge can hook it up to the RV. They get back to Jorge's house and at some point, Mr. Cabello still stays in the truck. Mr. Garcia goes in the house, stays somewhere between 10 and 30 minutes, comes back out. At that point, somehow, he informs or Mr. Cabello becomes aware that he is, that Mr. Garcia is in possession of methamphetamine. Okay, so did Mr. Garcia or did Mr. Cabello do anything knowingly to aid in the possession? My argument is no. Can we back up? I'm sorry. Go ahead. I just wanted to back up before we go to the possession. You're right that there's evidence that the jury heard that comes from your client's lips. What I'm trying to understand is what does this mean? And then I told him, I was like, why the hell would you tell, like, do this to me? I just got my truck on a Saturday. I was like, I'm not trying to risk this. What would be the risk if he didn't know prior to Mr. Garcia going into the house to get the methamphetamine? What would be the risk to your client? Well, okay. And let's suppose he knew that maybe he was going to have something, but we don't know what. But what would be the risk? The jury heard that evidence, right? So you're here on a sufficiency of the evidence, plain error challenge. So you've got a big hurdle. And I get that. I get that. So I'm trying to understand what would be the risk? Well, I mean, I think it's fair to assume that he assumed that all was not well. But under McFadden, which I attempted to argue, the words methamphetamine don't come out of anybody's mouth. They don't seem to come out of Mr. Cabello's mouth until he says in the truck, that's when I knew it was methamphetamine. Assuming you're correct, and he didn't, and that's accurate, that he had no inkling until they were in the truck. Once they're in the truck, it's not the inception of the possession. He's aiding and abetting the possession as they're driving down the road, aren't they? I want to address that, but it's going to take me a little bit if you'll humor me here. First of all, just to freeze frame things when they're in the truck, the word methamphetamine is apparently used. And we can say that at that point, Mr. Cabello knows he's potting over here, he's got methamphetamine. Possession is a fait accompli. He didn't aid that. But he's continued to do that. Okay, you're right. And I'm sorry, I don't mean to be impolite. No, no, no. But you can't aid and abet an offense that's already been committed. Now, what happens after that, to me, is an illustration of one of the differences between conspiracy and aiding and abetting. Both offenses require that the defendant share the same criminal intent as the principal or the co-conspirator. Both offenses require participation. But the difference is, at least for purposes of this case, how much participation. This is a Supreme Court quote, a conspirator need not facilitate each and every part of the substantive offense. That's Ocasio of the United States, 136, Supreme Court, 1423. You can enter a conspiracy at any time, or a person can, so long as the conspiracy continues to be ongoing. Based on the cases that I've cited in my brief, that's not true for aiding and abetting. You have to aid and abet every element of the offense. Okay. And Judge Elrod, I'm not trying to dodge you. I'm just slow getting to your answer here. Okay. So now they're in the truck. Now, at this point, based on, again, if we freeze frame it, Mr. Cabello, he believes his partner here, his methamphetamine, does he know, though, what his partner's intent is? According to Mr. Cabello, he says, I got to go back to work. I got to go back to work. Stockton, they get in the truck, off they go. At 1039, there's a phone conversation. Not clear who made the call. I think the agent that testified said that Mr. Garcia called him. Now, at that point, that conversation is pretty blatant. Okay. You know, they talk about price, and supposedly Mr. Garcia told him, you better be alone, I won't be alone, don't try to rip me, or whatever. Well, we can assume at that point, Mr. Cabello knows what's up, for sure, on the distribution part. So, according to Mr. Cabello, they are now south of I-20, heading back towards Stockton. Mr. Garcia says, nope, got to go back, turn around. So they turn around, go back to the road ranger. Okay. I think it's fair to assume that after the phone call, for sure, and the fact that Mr. Cabello drove the truck back with Garcia in it, knowing what was going to happen, there's at least an implicit agreement between the two of them as to what's going to go on. That's a conspiracy. And I think, arguably, you have a conspiracy there. What's your best case that possession is a completed offense and it's not continuing possession, that possession doesn't go on and on? I can't. Possession, in and of itself, is ongoing, for the possessor, for the possessor. Well, it's in his car. Okay. I mean, he could have jumped him out right there on the side of the road and said, we're not having any men on the road. Well, my argument is, the only point in time that he would really have felt like he needed to do that, if he was going to do it, was at the phone call. The phone call, hey, we all know what's up. I'm not doing this, we're done. But, for Mr. Garcia, the offense continues all the way till he gets, he loses it. But you can't, if aiding and abetting, and conspiracy, both, okay, let me back up. If an aider and abetter can simply jump on the bus sometime, anywhere between Mr. Garcia's time and the time he loses it, and help out a little bit, then aiding and abetting and conspiracy no longer have any difference. But help out a little bit is aiding and abetting. Beg your pardon? Help out a little bit is aiding and abetting. If you help out a little bit, every element. That's my argument. Okay. I appreciate it. Can I ask one clarifying question about your response to Judge Elrod? You agree that we're on plain error review on this claim, right? I am. I do agree with that. So, if you don't have a case, then haven't you conceded that there is no plainness, right? The second element is that it has to be established before this case. The second element of plain error review, that is, right? There has to be an error that's plain, that's prejudicial. Well, I have a case. I don't think it specifically addresses the question. The case is, let's see if I can find it here and then tell you what I think it says. Well, I'll tell you what. It's United States v. Lombardi, and I cited it in the brief. The case basically stands for the proposition that aiding and abetting, if the aider and abetter does nothing to aid one of the elements, is not an aiding and abetting. It's a conspiracy. And if you make the aiding and abetting just aid anything any along the way, you have collapsed the two offenses into one. That's out. I think we've probably beaten that worse enough here, unless you have further questions. Okay. The other question I intended to address was the statements in Rosemond v. United States that appear to hold that you can aid and abet only one element, as opposed to all the elements. And four responses to that. I'll begin with this, just to read the language. This is from Rosemond. It is inconsequential, as courts applying both the common law and Section 2 have held, that Rosemond's acts did not advance each element of the offense. All that matters is they facilitated one component. And, of course, I've cited cases in my brief. This is another one. Crime of aiding and abetting the possession of a drug with intent to distribute requires proof of two elements, aiding and abetting the possession and aiding and abetting the intent to distribute. It must be proved that the defendant aided and abetted each element of the underlying offense. So how can those be reconciled? Well, if both cases use element in the same way, you can't reconcile. I can't reconcile them. But they don't. Rosemond is a 924C case, obviously. 924C, when we think of elements, we think of the forbidden conduct, the mens rea, the required result. Under the Fifth Circuit pattern jury instructions for a 924C case, you would have about five different elements. Rosemond doesn't treat that offense as if it has five elements. His acts, this is straight out of the opinion, thus advance one part, the drug part of a two-part incident, or to speak more technically, one element, the drug element of a two-element crime. So Rosemond doesn't use element the same way the cases I cited use it. The element is not a cluster of facts that make up an offense, it's the offense itself. That's my first response. Second one is, the Fifth Circuit has interpreted Rosemond, in this case it's United States v. Bowens, 907F3-347, to basically, they've said, they've quoted it and used element in the same way Rosemond used it. The evidence was sufficient to find the jury's finding on the first element of the gun charge. It wasn't a cluster of facts. Another case that cites it, uses it the same way, Fifth Circuit case, United States v. Jordan, 945F3-245. I'd also point out that there are two Fifth Circuit cases post-Rosemond that use the same language. He must have aided and abetted each material element. One is United States v. Diaz, 941F3-729, it's a healthcare fraud case. The other one is United States v. Morrison, 833F3-491, it's an income tax fraud case. And my last response is basically what I've already said. If aiding and abetting requires minimal participation, you don't have to aid and abet each element, you can aid and abet everything, then conspiracy and aiding and abetting have collapsed into the same effect. Further questions, I'll yield back my 33 seconds. Counsel, I have one question about your Allen charge claim. Beg your pardon? I have one question about your third argument about the Allen charge. Sure. Do you think that that's subject to plain error review? Oh, you got me on that one, I'm afraid. In other words, is it forfeiture or waiver? Yes, sir. I got one Fifth Circuit case that I found. It's unpublished. United States v. Slovacek, 500F Federal Appendix 360, page 362. Finally, Slovacek claims that the government erred in three days of deliberation, that it could not reach an agreement before reading the charge to the jury. The district court read the charge to the defense and the government and asked if they had any objections. Because Slovacek's attorney explicitly stated that he had no objection to the modified charge, his claim is waived on appeal. It's an unpublished case. It doesn't help me that for sure. I appreciate the candor. Thank you. Yeah, you've saved time for rebuttal, Mr. Cicero. Thank you. Mr. Durbin? So I've probably asked you this sometimes in the past, so how many Fifth Circuit arguments for you approximately? I think this is 96. Okay. All right. Getting up to a magic number. I've lost track. My best guess, because the 90s are a distant history and all the records are gone, so I'm not quite sure, but I'm close to 100. Okay. When my hair reaches my knees, I'm going to quit. Anyway, it seems to me that on the aiding and abetting the sufficiency and whether it's continuing an offense, that issue, what occurred to me as I thought through this, I wish I had thought of this by the time I'd written the brief, but an analogy would be, suppose, Judge Oldham, I ran into you in the grocery store and you walk to the grocery store and you have purchased actually more than you planned to and now realize you can't really carry all that home and you come to me and you bump into me and say, oh, do you have a car with you? Oh, yes, I do. Well, I have to do a dinner tonight and I bought far more steaks and charcoal than I can actually carry. Can you give me a ride home? So now I know that you have charcoal and steaks. I know that you're in possession of them. You have asked me to assist you with your possession of them to get them from the possession at the grocery store to your home where you're going to do something with them. You have an intent to do something with them, make dinner. I don't know that I particularly care that you're going to make dinner, but I'm going to assist you in that you'd already come into possession of the steaks and the charcoal. I have now or I'm now in the process of aiding and abetting you, facilitating, assisting you knowingly and intentionally to continue your possession and to get your possession to the destination where you want to do something else with those things. I think that's what we've got here. It's just, it's not the recording which is government exhibit five. I think makes very plain that Mr. Cabello knew there was methamphetamine when he first took Garcia to his quote cousin's house. He knew and you asked the question about well what risk is he talking about and he mentions risk several times in that recording. The first time is at 507. I knew like but I didn't want to know like one like I geez I just got my truck like you know and he said he had just gotten his truck on Saturday. He hadn't even put gas in it yet and he says later on at 1010 he said and I told him why the hell would you do this to me? I was like whenever I just got my truck on a Saturday. I was like I'm not going to try and risk this and I think what he understood clearly was he was he could lose that truck. If he got caught in a in a deal delivering methamphetamine he was going to lose the truck. It was a brand new Ford F-150 blue truck. He wouldn't let them borrow it for their own purposes and so here he is he's got his motive which he claims he has a sexual interest in Garcia. He at some point has a financial interest at least insofar as he is interested in getting gas money and he's contradictory about that both in his statement to the police and in his in his testimony but he's got motives for doing this. Basically what he's got is I think a mitigation argument. He doesn't have an exoneration argument. He knew what he was doing. He knew it was meth. He knew the guy had meth. He was driving him around. He turned around and took him to the place and that possession I mean I'm not quite sure what what the dismissal was. Well those were just waiver cases. I mean those were just venue cases. Well that's what venue is about. If it's a continuing offense then venue properly lies wherever that offense has been convicted committed. If it's not a continuing offense then then venue doesn't properly apply. So I don't I don't think they're inapplicable but I think that's what the issue boils down to. I I think that the recording it's it's a little difficult to hear but and and I wish we had transcribed it because basically I sat down this week and transcribed it and he says multiple times he knows what's going on and he even knows the structure of the deal. It's we're going to go make this delivery. We're going to see if it's a legitimate buyer and then if it is we're going to notify Jorge and he's going to come and he's going to bring the rest of it to deliver to the buyer and so but the the reason that I that I thought about the analogy of the groceries is it gets sort of confused when you're when you're thinking about it in terms of a drug transaction as in in terms of did he aid and abet a distribution or did he aid and abets solely a possession with intent to distribute. Of course the distribution never occurred. Mr. Derby can I ask you a question about the standard of review. I I know you've seen a lot of these cases and I'm curious how you think about this. So it's a forfeited sufficiency the evidence argument. So those are two that creates two different problems right there's the sufficiency standard which is obviously extraordinarily high for an appellant and then there's the plein air standard which is obviously also very high and when you put them together I'm not even sure how you go about applying them to a particular set of facts right because even on a properly preserved sufficiency argument we look for any evidence that the jury could have considered. So when you add those two the sort of the any evidence standard for sufficiency and the fact that there couldn't possibly be I can't imagine how you would even do plein air review on a sufficiency argument right because we would be looking for something that would show the district judge that it was plainly insufficient on these facts and I'm not sure how I just don't even understand how you would apply the two things. Can we just talk and I'm not advocating right yeah I'm curious about your the way you were understood it either judge it seems to me the rational jury could find beyond a reasonable doubt. I don't know how there's anything less than that. I don't the that forfeiture doctrine that that attends to rule 29 and when you make the motion and whether or not you preserved it I've always argued it and and I know this court has gone back and forth at times about when you're applying that well is it a scintilla evidence is it some evidence is that there's something in the record that supports but but as I understand the conviction it's a constitutional standard of a rational jury could find each of the elements beyond a reasonable doubt. I'm not in this is just candor this is Richard Durbin talking having done this for a while not advocating for the government but it's always sort of made me wonder well I think at the end of the day we're still looking at whether or not a rational jury would find beyond a reasonable doubt and in this case we don't have to resolve I don't think that's I don't think really the makes a difference and you ask a good question about the Allen charge whether it's waiver or whether it's forfeiture and waiver is a knowing intentional relinquishment of the right does the defendant have to do that or is it enough where I've got another case I'm working on right now that's got that sort of an issue where the lawyer stands up and says well no we don't want a jury trial on a forfeiture on the forfeiture aspect of it the defendant comes back later said wait a minute nobody talked to me about this I didn't I didn't waive it so is it a forfeiture is it a waiver. Well we've certainly never said that Allen charges are the kind of right that the defendant must individually waive have we. I don't think so no and and I mean I look at the Allen charge in this particular instance I think Judge Counts was very cautious about it the jury had deliberated for at least six hours maybe a little bit longer they'd indicated several times that they were that they were that didn't think they were going to be able to reach a decision and there's nothing wrong no complaints about the language of the charge and it's a it's a well-balanced charge and it seems to me on this case it was it was well timed it was well given and you never know what's going on with the jury you know we sort of look at them as this this single mind that comes back with this this wise judgment but who knows what's going on back in there and maybe all that they needed at that point was look guys you don't do this somebody else is going to have to do it that's not coercive that's just oh okay yeah okay well then we'll step up and do it and that's all there is to it but and we don't know but I don't think you can look at the circumstances of how long it took them to come back after the charge and say oh that was coercive because we don't know how often they come back after a charge and and find not guilty or or don't come back within you know 10 or 15 minutes so I just don't think that that's particularly I mean it's in all the cases but I don't think it's a particularly informative indicator I'm guessing that I don't have anything else to add to um Rosemond I don't really understand it I think Judge Elrod you had a you wrote the opinion in a case called Cooper that involved a 924c it was a gun in a backpack and it was it was a plain air standard of review and the defendant knew about the backpack and he was in there and under plain air review that I think is of course that that's sufficient but that's not this case I don't know which elements were talking about that that uh he didn't aid in the bet because the allegation was he aided and abetted the possession with intent to distribute methamphetamine well he associated himself with it he participated in it he acted in such matter to bring about the the object of it I don't think this is a question of conspiracy but not aiding or abetting he he assisted he knew what he was doing he may have had he may not have been a professional dope dealer or an experienced one but he knew what he was up to and as you point out with the comments about risk to the truck he knew well enough to know what what he was exposing himself to it wasn't just being arrested he was gonna lose his truck which clearly meant a lot to him but if there are no other questions I'll take my time thank you Mr. Durbin Mr. Pichero you've saved some time for rebuttal well I did transcribe as best I could uh the interview and I'll agree with Mr. Durbin it was difficult to do but I think based on Judge Oldham's question about why would you do this to me I think it's important to notice the sequence here at least as I as wrote down this begins at 10 13 during the interview and this is after uh Deputy Ornelas has kind of put the clamps down on Mr. Cabello said look I don't let's tell me the truth here okay whenever you were at that this yeah whenever you we were at that house that's when he told me he was going to take something question you knew what it was you knew what it was answer and I told him why would you do this to me I just got my truck on Saturday I would like why the hell would you do this to me okay question now here's the deal when you left his house you knew what was in it right you knew there was meth answer yeah okay so it looks to me like the question or his comment why would you do this to me occurred right at right after he's been he knows now for sure that this is meth not sometime before and I may have misunderstood your question I have looked up a number of aiding possession cases I'm not going to go through all of them I can't find any of them we're merely driving a truck or driving a vehicle with somebody in it these are quotes from fifth circuit cases proof of mere negative acquiescence will not suffice proof that a defendant associated with a person who controls a drug is insufficient to prove constructive possession the defendant must share the intent to commit the offense again this is a pretty reluctant guy here and you know I can I don't know what intent in conspiracy is compared to intent for aiding and abetting but this is a reluctant guy the aiding and possession cases that I find this is uh u.s versus acquire aguire 716 f second 293 a reasonable jury can infer that aguire supplied the drugs to Cervantes Cervantes is a defendant if you supply the drugs you certainly aided possession um this is united states the official 686 f second 1082 this was both government's brief and my reply brief official shared control over the disposition of the cocaine when in the hotel room with ludwig suffices to prove assistance to ludwig in possession of the cocaine the last one i'm going to skip one here just because this was united states v pozo 697 f second 1238 and evidence that pozos helped arrange the sale uh also that says without more would not suffice well I think I think the government takes the position that the official case is the one that controls here right correct well that's the one they cited but my point is is that to going back to to uh mr bourbon's example he knows that the guy has charcoal but that's not enough he's already possessed it and the fact that it's an ongoing crime for that guy doesn't make it an ongoing cry for the aid or bitter i guess i guess that's my argument and i know i've beaten that for a long time that's all i got anything else all right thank you mr cachero and the court notices that your court appointed and we want you to know how much we appreciate your willingness to take the appointment it's not easy to pursue a plain air case and you've done a fine job and we hope you'll be continually available to to take appointments in the court i will thank you your case is under submission